IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

2007 OCT 26 P 4:04

| | | |
|---|---|---|
| FREDA COOPER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | ) | CIVIL ACTION NO.: CV506-077 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge L. Ellis Davis ("the ALJ" or "ALJ Davis") denying her claim for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff protectively filed an application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on March 12, 2004, alleging that she became disabled on January 1, 1993, due to asthma, chronic obstructive pulmonary disease ("COPD"), emphysema, a nerve disorder, hypertension, and low blood sugar. (Tr. at 103). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On January 19, 2006, ALJ Davis held a

hearing at which Plaintiff appeared and testified. Kim E. Bennett-Simmons, a vocational expert, also testified at this hearing. ALJ Davis found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 13). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4).

Plaintiff, born on May 18, 1956, was forty-nine (49) years old when ALJ Davis issued his decision. She has a limited education. Her past relevant work experience includes employment as a nursing assistant and in a hospital dietary position. (Tr. at 20).

**ALJ'S FINDINGS**

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20

C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of January 1, 1993, through December 31, 1997 (Plaintiff's date last insured) there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 15). At Step Two, the ALJ determined that Plaintiff had no conditions on or before Plaintiff's date last insured which could be considered "severe" under the Regulations, and, therefore, any of Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id.). Also at Step Two, the ALJ found Plaintiff's asthma and COPD were severe since at least the date of her application for benefits; however, ALJ Davis also found Plaintiff's hypertension, low blood sugar, and depression were severe but did not meet or medically equal a listed impairment. ALJ Davis found Plaintiff had the following residual functional capacity: Plaintiff's asthma and COPD reasonably prevented her from heavy lifting and carrying, climbing a rope, scaffold, or ladder, and being exposed to exacerbating factors in the work place; and,

though Plaintiff possibly had some cognitive limitations, there was no evidence of any mental impairment which prevented Plaintiff from understanding, remembering, and carrying out simple and detailed job instructions. (Tr. at 19). At the next step, ALJ Davis concluded that Plaintiff could perform her past relevant work as a certified nursing assistant and in the hospital dietary position, as they are performed in the national economy. (Tr. at 19-20).

## ISSUES PRESENTED

Plaintiff asserts ALJ Davis erred by: 1) failing to find that Plaintiff's shortness of breath and asthma difficulties constituted a severe impairment prior to her date last insured; and 2) ignoring evidence of Plaintiff's IQ scores before age 22.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v.

Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Evidence of a Severe Impairment Prior to Plaintiff's Date Last Insured

Plaintiff contends the ALJ provided no medical evidence to support his finding that she did not suffer from a severe impairment prior to December 31, 1997, the date she was last insured. Plaintiff asserts the State Agency found she had a severe impairment prior to the expiration of her date last insured, but ALJ Davis failed to address this finding.

Defendant alleges Plaintiff sought sporadic treatment for asthma symptoms prior to the date she was last insured. Defendant also alleges the medical evidence before the ALJ failed to demonstrate any limitations on Plaintiff's ability to perform work related activities. Defendant asserts the lack of medical evidence supporting Plaintiff's claim that she had a severe impairment prior to her date last insured suggests she had no functional limitations on her ability to work, and thus, Plaintiff failed to carry her burden at Step Two. Defendant avers the State Agency's assessment of Plaintiff's impairment was based on medical records which post-dated Plaintiff's date of last insured.

When a claimant makes an application for disability in which she alleges an impairment severe enough to rise to the level of disability, the claimant has the burden

to prove her disability at Step Two of the sequential evaluation process. Street v. Barnhart, 133 Fed. Appx. 621, 630 (11th Cir. 2005). For an impairment to be considered "severe" within the meaning of the Act, the impairment must significantly limit an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). Examples of basic work activities include: "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 416.921(b).

ALJ Davis determined there was no evidence that Plaintiff suffered from a severe impairment on or before her date last insured, December 31, 1997. In reaching this determination, the ALJ noted Plaintiff's treatment records dated on or before her date last insured reflected Plaintiff's reports of having asthma since childhood and of smoking one to two packs of cigarettes a day. ALJ Davis also noted Plaintiff's lungs were clear in many of her examinations and that there were occasional findings of smoker's rales, diffuse wheezing, and dry coughing during bouts of bronchitis and exacerbation of asthma; however, ALJ Davis observed these episodes lasted no more than a few days. The ALJ stated there was no use of accessory muscles in respiration and no complaints of constant asthmatic symptoms which did not respond to treatment. Plaintiff's chest pain and tenderness were determined to be due to costochondritis and mild bronchospasms, and Plaintiff's EKG and C-spine x-rays were normal. ALJ Davis

observed notes from Plaintiff's treating medical sources documenting Plaintiff's visits during the relevant period (i.e., prior to her date last insured), which did not indicate Plaintiff's condition warranted pulmonary function studies. (Tr. at 15-16.) Finally, ALJ Davis even noted Plaintiff's medical records from after her date last insured revealed that Plaintiff continued to be treated symptomatically for occasional exacerbations of asthma, bronchitis, and hypertension, all of which responded to prescribed therapy and were not shown to persist such that they resulted in significant, ongoing limitations on Plaintiff's ability to perform basic work activities on or before December 31, 1997. (Tr. at 16).

The evidence before the Court indicates Plaintiff did not meet her burden at Step Two to establish she suffered from a severe impairment on or before her date last insured. There are only ten (10) pages of medical records dated prior to December 31, 1997, detailing six (6) medical visits in less than a two (2) year period (Tr. at 279-88), and there is no observation by Plaintiff's doctors that Plaintiff's asthma (or any other condition) affected her ability to perform basic work activities. Even accepting as true Plaintiff's assertion that a State Agency doctor, George Cross, III, found Plaintiff to have a severe impairment prior to the expiration of her date last insured, Dr. Cross' findings are dated September 8, 2004,-- nearly seven (7) years after Plaintiff's date last insured—and are based on evidence which post-dated Plaintiff's date last insured.[1] (Tr. at 298-305). ALJ Davis' determination that Plaintiff did not have an impairment considered to be severe on or before December 31, 1997, is supported by the lack of medical evidence to corroborate Plaintiff's assertions in this regard.

[1] Dr. Abraham Oyewo, a consultative examiner, determined the severity or duration of Plaintiff's symptoms was disproportionate to the expected severity or duration based on Plaintiff's medically determinable impairments. (Tr. at 325).

## II. Listing 12.05C

Plaintiff avers ALJ Davis erred in finding her school records failed to demonstrate her IQ prior to age 18 and in finding there were no intelligence test results contained in her school records. Plaintiff contends these results were in her records, but the ALJ ignored uncontradicted evidence of her IQ scores, which existed before she attained the age of 22. Plaintiff also contends the first prong of Listing 12.05C is met by these IQ scores, and the second prong of this Listing is met by the State Agency's finding that Plaintiff was limited to medium-duty work as of her date last insured.

Defendant submits the IQ scores Plaintiff presented are not compatible with the criteria set forth in Listing 12.05C, and therefore, cannot be considered valid for the purposes of this Listing. Defendant asserts Plaintiff's grades from high school, with the exception of one, were at least average, which "strongly militates against the suggestion that she had adaptive deficits prior to age 22." (Def.'s Br., p. 9). Defendant also asserts Plaintiff fails to meet the second prong of Listing 12.05C because Plaintiff did not have any severe impairment prior to her date last insured and because Plaintiff was not found to have any severe mental impairments after her date last insured.[2]

Listing 12.05C, in pertinent part, provides:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .

[2] It appears Plaintiff's enumerations of error pertain only to the time prior to her date last insured. (See Tr. at 28; Pl.'s Br., p. 8).

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The introductory paragraph of this Listing contains a "diagnostic description for mental retardation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. A claimant's impairment must satisfy this diagnostic description and any one of the four sets of criteria set forth in this Listing before a finding is reached that the impairment meets the Listing. Id. (Emphasis added). A valid I.Q. score, one falling between sixty and seventy, is not conclusive of mental retardation when "the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)); Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001). "A claimant who contends that [s]he has an impairment that meets or equals a Listing bears the burden of presenting evidence establishing how [her] impairment meets or equals that Listing." Wilbon v. Comm'r of Soc. Sec., 181 Fed. Appx. 826, 828 (11th Cir. 2006) (citing Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir.1987)).

ALJ Davis concluded Plaintiff did not meet Listing 12.05C because her school records failed to demonstrate her IQ prior to age 18 or that Plaintiff had significant limitations in adaptive functioning, as required by the diagnostic definition for mental retardation. ALJ Davis noted one of Plaintiff's elementary teachers commented that Plaintiff was "very slow" and her work was "below grade level", but there was no valid psychometric testing which demonstrated these deficiencies in her academic performance were the result of cognitive limitations and not by choice or disinterest in

learning. (Tr. at 16). Plaintiff's school records also show Plaintiff underwent remedial work in a special reading class for a year but Plaintiff's school citizenship was satisfactory or excellent on all but one occasion. Plaintiff reportedly was moved to "educable mental retarded" ("EMR")[3], but the ALJ noted the basis for this move was not shown on her records. In any event, ALJ Davis noted Plaintiff's referral for EMR, without accompanying IQ scores and in the absence of evidence of significant deficits in adaptive functioning, did not establish that Plaintiff's performance in school was due to mental retardation (i.e., subaverage intellectual functioning). ALJ Davis also noted Plaintiff was enrolled in regular classes during high school, and her yearly grades were "average or better in all academic and elective courses, except for a passing grade of 'D' in home economics." (Tr. at 17). ALJ Davis further noted Plaintiff withdrew from school in her senior year to marry.

In addition, the ALJ noted Plaintiff testified she could read, write, and perform simple arithmetic. Plaintiff worked as a certified nursing assistance and in a hospital dietary position from 1985 until her alleged onset date of January 1, 1993. Plaintiff stated she stopped working in these positions because her physical health prevented her from lifting and caring for the patients as necessary, not because she was incapable of understanding, remembering, and carrying out her job duties or because she was fired from her jobs due to an inability to perform her duties in a satisfactory manner as a result of cognitive deficits. ALJ Davis observed there was no evidence that Plaintiff did not perform her job duties as they were performed by other certified nursing assistants in her community or that she did not perform her job duties satisfactorily for seven (7)

[3] EMR was one of three educational classifications used to place children into educational programs in the 1970s. In 1973, students once defined as EMR were no longer considered "mentally retarded". (Tr. at 17).

years. ALJ Davis also observed Plaintiff was able to obtain certification as a nursing assistant, regardless of the way in which she was trained or asked to perform the job once she was hired. ALJ Davis concluded Plaintiff's school records, ability to become certified as a nursing assistant, and her work history supported the determination that Plaintiff did not meet or equal Listing 12.05C or that she had a severe mental impairment on or prior to her date last insured.

ALJ Davis' conclusion that Plaintiff did not meet or equal Listing 12.05C on or before December 31, 1997, is supported by substantial evidence. The undersigned notes Plaintiff school records, which seem to indicate Plaintiff's total IQ was 67 in 1967and 69 in 1970.[4] (Tr. at 171). However, the rest of Plaintiff's school records do not suggest Plaintiff suffered from any adaptive functioning limitations, and evidence of two IQ scores is not enough to support such a finding, especially in light of Plaintiff's grades. (Tr. at 30, 168-74). In addition, the evidence of Plaintiff's work history militates against a finding of adaptive functioning limitations. (See Tr. at 25). Finally, Plaintiff stated the reason she stop working was because of her physical health, not because of any mental limitations she asserts she had. (See, e.g.,Tr. at 26, 51, 71, and 89).

Plaintiff did not meet her burden of establishing she met or equaled Listing 12.05C prior to her date last insured. Assuming Plaintiff's IQ scores were sufficient to satisfy a portion of the requirements for Listing 12.05C, as discussed in the preceding

[4] The undersigned also notes ALJ Davis' statement that Plaintiff's school records "fail to demonstrate [Plaintiff's] IQ prior to age 18" (Tr. at 16), which appears to be inconsistent with the evidence before the Court. (Tr. at 168-74). However, ALJ Davis also stated Plaintiff's school records "fail to demonstrate . . . that [Plaintiff] had significant limitations in adaptive functioning, as required by the DSM for a diagnosis of mental retardation at any level." (Tr. at 16). This statement appears to be consistent with the evidence of record and with the requirements for Listing 12.05C. Significantly, Dr. Janet Telford-Tyler, a psychological consultant, found Plaintiff to have a non-severe affective disorder (Listing 12.04) and that she had a mild degree of limitation in her restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace and had no episodes of decompensation. (Tr. at 306, 316).

section, Plaintiff failed to establish she had any other impairments which imposed an "additional and significant work-related limitation" prior to her date last insured. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Thus, Plaintiff has not satisfied her burden as to the entirety of Listing 12.05C, and ALJ Davis' findings in this regard are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 26th day of October, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)